### THE EAGLE PACKET COMPANY

*v.*

### MARY AGNES DEFRIES.

*Filed at Mt. Vernon, May 14, 1880.*

1. NEGLIGENCE—*landing of passengers from a steamboat.* Where a steamboat is landing at a wharf for the purpose of enabling passengers to go ashore, it is the duty of the proper officers of the boat to provide means for the safe transit of those who wish to leave the boat,—and the fact that a stage plank, placed for the use of passengers in landing, fell while a passenger, in the exercise of due care, was walking over it, is *prima facie* evidence of negligence on the part of the officers of the boat in the performance of that duty, and, in an action by the passenger to recover for an injury caused by the falling of the plank, the burden is upon the defendant to show the falling of the plank was not the result of negligence on the part of the officers of the boat.

2. Although it may appear that the end of the boat was moved around by the wind, and that this caused the falling of the stage plank, yet, it not being shown that the boat was fastened to the wharf in any way, or that it could not have been fastened so as to have prevented it from being moved by the wind, there would not appear to have been due care on the part of the officers of the boat to discharge it from liability.

3. RELEASE—*whether properly obtained, so as to be binding.* In an action against a carrier of passengers to recover for personal injuries received by the plaintiff, occasioned by the alleged negligence of the defendant, there was interposed as a defence a paper executed by the plaintiff, purporting to be a release of the cause of action. It appeared the plaintiff was an illiterate woman, unable to read or write, and the paper was obtained from her during

her illness consequent upon the injury, by the physician who was attending her, in the absence of any of her friends to whom she could look for advice,— the physician explaining to her that the servants of the defendant had expended the sum of money named in the paper for her benefit, and wanted something to show what the money had been expended for, and this was all the explanation he made. In view of these facts, and especially the fact that the receipt or release was procured by the attending physician, it was held it could not properly be considered as binding upon the plaintiff.

4. INSTRUCTION—*whether justified by the pleadings.* In an action to recover for personal injuries occasioned by the alleged negligence of the defendant, it was averred in the declaration, in respect to the character of the injury received, that the plaintiff " then and there became and was sick, lame and disordered, and so remained for a long time, to-wit, hitherto," etc. This was a sufficient averment to authorize an instruction to the effect that the jury might award to the plaintiff damages for such permanent injury as the evidence showed she had sustained, the question of the permanency of the injury being one resting on the evidence and which need not be averred in the declaration.

5. EVIDENCE—*as to pecuniary circumstances of the plaintiff.* In an action on the case to recover for an injury occasioned by the negligence of the defendant, the latter offered to prove what were the pecuniary circumstances of the plaintiff, but it was held such evidence was not admissible.

APPEAL from the Circuit Court of Jersey county; the Hon. CYRUS EPLER, Judge, presiding.

This was an action on the case, brought by appellee against appellant, to recover damages for injuries sustained by her whilst a passenger on one of appellant's steamboats. The declaration alleged that appellee became a passenger on appellant's steamboat Spread Eagle, to be carried from St. Louis to Grafton, and that it was the duty of the defendant, upon the arrival of said steamboat at Grafton, to give the plaintiff an opportunity of safely alighting therefrom, and then and there to secure said steamboat to the wharf and to place proper and suitable stage-planks or gangways from said steamboat to the wharf, and to have said stage-planks or gangways properly secured to enable the plaintiff to walk safely from the said steamboat to the wharf; yet the defendant did not regard its duty in that behalf, but, on the contrary, on the arrival of the steamboat at Grafton, and while the

plaintiff, with all due care and diligence, was walking from the steamboat to the wharf upon the stage-plank or gangway provided by the defendant, said stage-plank or gangway, by, through and in consequence of the negligence of the defendant, fell from the said steamboat and upon the plaintiff, by means whereof the plaintiff's leg and other parts of her body .were greatly bruised, hurt and wounded, whereby the plaintiff was obliged to and did lay out large sums of money in and about endeavoring to be cured, and also the plaintiff then and there became and was sick, lame and disordered, and so remained for a long time, to-wit, hitherto, during all which time the plaintiff suffered great pain, etc.

To this declaration the defendant pleaded the general issue and a special plea of release, upon which issues were joined and a trial had, resulting in a verdict and judgment for the plaintiff for the sum of $800, from which judgment this appeal was prosecuted.

The evidence introduced by the plaintiff tended to show the following facts: On April 15, 1875, plaintiff embarked on the Spread Eagle at St. Louis, bound for Grafton. Upon paying her fare and securing her ticket, she went to the room of the stewardess and sat down to take a smoke, where she remained until the arrival of the boat at Grafton, which was after dark. She did not leave the boat with the other passengers, as she was not aware the boat had arrived until informed thereof by the stewardess, when she at once started up. She gave her ticket to the steward and started to leave the boat, carrying with her a large basket without being offered any assistance by the steward or any one else. One of the deck hands crossed the stage-plank just before her. While she was crossing, the stage-plank fell with her, from which she received a severe injury to her leg, which still caused her pain at the time of the trial. On the 19th of April, 1875, the plaintiff signed a receipt releasing the defendant from all liability in consideration of the sum of $40, but she could

neither read nor write, nor did she understand the nature and effect of the paper she was signing.

The evidence introduced by the defendant tended to show that the falling of the stage-plank was caused by the wind blowing the boat around. It also tended to show that the receipt executed by the plaintiff was procured by the physician whom the defendant had employed to attend the plaintiff; that she understood what the paper was when she signed it, and that the physician explained to her that the agents of the company had expended the money for her benefit, and wanted something to show the company what the money had been expended for.

The court gave ten instructions on behalf of the plaintiff, refused two requested by defendant and gave six of its own motion. The assignments of error call in question the rulings of the court below in the giving and refusing of instructions, the admission and exclusion of evidence, and in overruling the motion for a new trial.

Mr. MORRIS A. LOCKE, and Messrs. DUMMER, BROWN & RUSSELL, for the appellant.

Messrs. SNEDEKER & HAMILTON, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

From a careful examination of the evidence, we are satisfied the plaintiff was entitled to a verdict in her favor. There is nothing in the record tending to prove a want of ordinary care on her part, which could have contributed to her injury. It is, however, insisted there is an entire absence of proof of negligence on the part of defendant. This view of the case results from a misapprehension of the legal effect of the evidence introduced by the plaintiff. It was clearly the duty of defendant to provide means by which plaintiff could safely go from the boat to the wharf; and the fact that the stage-plank used for that purpose fell whilst plaintiff, in the exercise of

due care, was walking over it, is *prima facie* evidence of neg-
ligence on the part of the defendant in the performance of
that duty, and casts upon the defendant the burden of proving
the falling of the plank was the result of an accident for
which defendant was not responsible.    This position is sus-
tained by the ruling of this court in *Pittsburg, Cincinnati
and St. Louis Railway Co.* v. *Thompson,* 56 Ill. 138, and of
the Supreme Court of the United States in *Railroad Co.* v.
*Pollard,* 22 Wall. 342, and in *Stokes* v. *Saltonstall,* 13 Peters,
181.    In the last named case it is held that the upsetting of
a stage coach, by which a passenger is injured, is *prima facie*
evidence of negligence on the part of the driver, and casts
upon the proprietor the burden of showing the driver was in
every respect qualified, and acted with reasonable skill and
the utmost caution.

When, therefore, in the case at bar, it is shown the plain-
tiff has been injured by the falling of the stage-plank, the
burden is cast upon the defendant to show this was caused by
an accident which, by the exercise of ordinary care on the
part of defendant's servants, could not have been avoided.
It is true, the evidence tends to show the end of the boat was
moved around by the wind, and this caused the stage-plank
to fall; but it does not appear the boat was fastened to the
wharf in any way, or that it could not have been so fastened
as to have prevented its being moved by the wind.    The evi-
dence wholly fails to establish ordinary care on the part of
the defendant to prevent the falling of the stage-plank.

The jury properly found the plea of release was not sus-
tained.    The evidence shows that plaintiff, at the time of the
execution of the receipt, was an illiterate woman, unable to
read or write, and that it was obtained from her during her
illness consequent upon her injury, and by the physician em-
ployed by defendant to attend her, and in the absence of any
of her friends to whom she could look for advice.    The phy-
sician explained to her that the officers of the company had
expended the amount of money named in the receipt for her

benefit, and wanted something to show the company what the money had been expended for, and this was all the explanation he made.  Taking into consideration all these facts, and especially the fact that the receipt was obtained by the attending physician, we are of opinion it can not be held binding upon her.

Inasmuch as, upon the evidence, the jury would not have been justified in rendering a verdict for the defendant, it is only necessary for us to consider such of the alleged erroneous rulings of the court below as may have affected the amount of the damages awarded the plaintiff.  The only rulings of this character of which complaint is made, are the giving by the court below of the plaintiff's third, fifth and seventh instructions, and the refusal to permit defendant to introduce evidence as to the pecuniary circumstances of plaintiff.

It is insisted that, as the declaration did not allege plaintiff had suffered a *permanent* injury, it was error to give the third and seventh instructions, which authorized the jury to award the plaintiff damages for such permanent injury as the evidence showed she had sustained.  This position is untenable. The declaration expressly alleges that the plaintiff "then and there became and was sick, lame and disordered, and so remained for a long time, to-wit: hitherto," etc.  The permanency of plaintiff's injury was merely evidence to be considered by the jury in determining the severity of the plaintiff's sickness, lameness and disorder, and the rules of pleading do not require the plaintiff to set forth in his declaration the evidence upon which he relies.

The objection made to the fifth instruction is, that it authorized the awarding of exemplary damages if the evidence showed wilful negligence on the part of the defendant, and that there was no evidence on which to base the instruction. Conceding this instruction should not have been given, still, the damages awarded the plaintiff are not so large as to justify us in the belief the jury gave any exemplary damages, and

we would not reverse the judgment for this error, which did no harm.

It is also insisted the court below erred in refusing to admit evidence offered by the defendant as to the pecuniary circumstances of the plaintiff. We know of no rule of law, and have been referred to none by counsel, holding that in an action of this character it is competent to show the financial standing of the plaintiff. The mere fact that plaintiff in this case made some statements, without objection by defendant, as to her pecuniary. circumstances, does not require the court, upon the application of defendant, to try immaterial issues.

There is no substantial error in this record, and the judgment of the court below must therefore be affirmed.

*Judgment affirmed.*